# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Kenneth Ditkowsky and JoAnne Denison, | ) ) | |
| Plaintiffs, | ) ) | Case No: 14 C 375 |
| v. | ) ) ) | Judge Ronald A. Guzmán |
| Adam Stern, Cynthia Farenga, Jerome Larkin, and Peter Schmiedel, | ) ) ) | |
| Defendants. | ) | |

## ORDER

Plaintiffs Kenneth Ditkowsky and JoAnne Denison sue Adam Stern, Cynthia Farenga, Jerome Larkin, and Peter Schmiedel in a two-count complaint alleging violations of their First, Fifth and Fourteenth Amendments (Count I) and a state law claim for intrusion upon seclusion (Count II). All defendants move to dismiss the complaint in its entirety. For the reasons stated herein, the motions (Dkt. ## 10, 14, 31, 39) are granted. Civil case terminated. All other pending motions are denied as moot.

## STATEMENT

**Facts**

The plaintiffs' complaint is long, rambling and at times difficult to understand. The relevant facts as alleged appear to be as follows. In June 2009, Mary Sykes, "an articulate and independent senior citizen," sought an order of protection against Carolyn Toerpe for attempting to "usurp [her] privileges and immunities." (Compl., Dkt. # 1, ¶ 8a.) In July 2009, Toerpe commenced a guardianship proceeding to have Mary Sykes declared incompetent. (*Id*. ¶ 8b.) Defendant Stern, an attorney appointed as a guardian ad litem ("GAL") for Mary Sykes, allegedly recommended physicians to the court in the guardianship case who would declare Mary Sykes incompetent. (*Id*.

¶¶ 6a, 8d).

Denison published a blog discussing "the alleged corruption of certain elected officials and their relation to some other person[s] who were allegedly depriving senior citizens and in one particular case Mary Sykes of their Civil and Human Rights." (*Id.* ¶ 10.) In November 2009, Denison was engaged to represent Gloria Sykes in the guardianship proceeding, but Stern and Farenga, another GAL for Mary Sykes appointed in the guardianship proceeding, "inappropriately and falsely" represented to the court that Denison had a conflict of interest. (*Id.* ¶ 11.) The guardianship court agreed and disqualified Denison from representing Gloria Sykes in that proceeding. (*Id.*) Ditkowsky also was denied leave to file an appearance in the guardianship proceeding. (*Id.* ¶ 13.)

After "several citizens" appeared in Ditkowsky's office in April 2010 to complain that Mary Sykes had been "railroaded" into a guardianship and "deprived of her liberty, her property, her civil rights and her human rights," Ditkowsky began an investigation into the allegations. (*Id.* ¶¶ 14, 15.) As he began his investigation, he received two threatening phone calls from Schmiedel, an attorney representing Carolyn Toerpe, and Stern, a GAL for Mary Sykes. (*Id.* ¶ 16.) According to the plaintiffs, both Schmiedel and Stern falsely told Ditkowsky that the guardianship case judge had barred any inquiry into Mary Sykes' competency and they threatened Ditkowsky with the possibility of sanctions. (*Id.*)

Larkin, the Administrator of the Illinois Attorney Registration and Disciplinary Commission ("ARDC"), allegedly:

> acted in concert with each of the defendants . . . to use the color of his State office to wrongfully in direct violation of 42 USCA 1983, discourage, impede, hinder, intimidate and otherwise limit the plaintiffs right to communicate with the electorate concerning such facts as: i. A lack of comportment and compliance by the Circuit

> Court of Cook County, Illinois Probate Division with the statutory mandates . . . in a large number of guardianship cases. . . . ii. A Government accounting office report to congress concerning what appears to be a Nation-wide scandal in which the judicial system appears to be culpable in allowing many senior citizens to be deprived of [their] . . . rights. . . . iii. Specific inappropriate actions involving the Mary Sykes case and the complaints of other citizens concerning alleged misconduct of Farenga, Stern, Schmiedel and other 'judicial officials[;] iv. Commencement of the grievous actions that give rise to the Complaint. . . . v. **A policy and practice instituted by Larkin** and unknown persons, of interfering with content related (political speech) uttered by certain unfavored attorneys such as the plaintiff Ditkowsky [and] . . . Denison. . . .

(*Id.* ¶ 20) (alterations in original).

From 2009 to the present "citizens" wrote to Larkin regarding the Sykes case and another case filed in this Court regarding the Mary Sykes guardianship proceeding captioned *M.G.S. v. Toerpe*, 11 C 7934, which was dismissed by the district court judge for lack of subject matter jurisdiction. (*Id.* ¶ 21.)

In November 2011, Farenga wrote a letter to Larkin referring Denison for potential discipline based on purportedly untrue statements Denison (and Ditkowsky) made on their blog "ProbateSharks.com" about Farenga, Stern, and Toerpe, including allegations of criminal conduct related to the Mary Sykes case. (*Id.* ¶ 22; *id.*, Ex. 1, 11/20/11 Letter from Farenga to ARDC.) Larkin subsequently filed disciplinary complaints against Ditkowsky and Denison. (*Id.* ¶ 23.)

**Analysis**

The plaintiffs' first count alleges civil rights violations. Specifically, the complaint states that:

> This lawsuit is not an appeal of any legitimate or properly authorized court proceeding or commission. This lawsuit is directed solely against the individual actions of Larkin, Stern, Schmiedel, Farenga, and those culpable persons who acted in concert with the defendants named supra to interfere, impede or attempt to censor the association of the plaintiffs, the complaints to law enforcement or each other by the promulgations of actions by the defendants that were reasonably calculated to

3

violate 42 USCA 1983.

(*Id.* ¶ 27.)

Despite the plaintiffs' assertion that they are not challenging state court actions, they allege that the defendants deprived them of their First, Fifth and Fourteenth Amendment rights when they "successfully prevented each defendant from representing the interests of a client by illegally obtaining from the Probate Court orders against the plaintiffs, and . . . preventing and denying them the right to represent the interests of interested persons in the case of" Mary Sykes. (*Id.* ¶ 25.) This allegation clearly asks the Court to review a state court order, which it cannot do under the *Rooker-Feldman* doctrine. *Dookeran v. Cnty. of Cook*, 719 F.3d 570, 575 (7th Cir. 2013) ("*Rooker–Feldman* is . . . concerned with 'situations in which the state court's decision is the source of the harm that the federal suit is designed to redress.'") (quoting *Simmons v. Gillespie*, 712 F.3d 1041, 1043 (7th Cir. 2013)). To the extent that the plaintiffs base any of their civil rights claims on allegations that a Probate Court order was incorrect or that they were denied rights in Mary Sykes' guardianship proceeding based on that court's rulings, the Court lacks jurisdiction under the *Rooker-Feldman* doctrine.

The plaintiffs also allege:

> 28. That in pursuance of their nefarious scheme the said Stern, Farenga, and Larkin knowingly used their positions as 'guardian ad litem, Administrator of the Commission, and the policy and practice of the Commission (administered to be Larkin) to:
>
> a. publish on a "State of Illinois" maintained by the Commission web-site misleading and fraudulent material reasonably calculated to 'cover–up' miscreant conduct by the Court [i.e. acting without jurisdiction and allowing the assets and the liberty of Mary Sykes (and others) to be confiscated] and Stern, Farenga, and Schmiedel.
>
> b. Create the façade that by Communicating with other members of the public Ms.

4

Denison and Mr. Ditkowsky were violating her ethical responsibility. This was done by filing fraudulent and misleading complaints with the Commission that Larkin administered and causing negative reports to be generated. (In one of the reports the panel suggested that the act of communication was not protected by the First Amendment.)

c. Prevent JoAnne Denison from being represented by the counsel of her choice at Commission hearings.

d. Cause to be published in publications such as the Daily Law Bulletin words and phrases that would be wrongfully interpreted to suggest that the plaintiffs acted unethically and were making false reports concerning the Sykes case.

e. Prevent an HONEST complete and comprehensive investigation of elder cleansing (i.e. elder abuse/financial exploitation/abusive guardianships) such as was and is occurring in the Mary Sykes case. *The documents contained in the Appendix attached to the electronic filing of the complaint are all incorporated by reference and made part hereof as if set forth in detail.*

(Compl., Dkt. # 1, ¶ 28) (italics in original and certain alterations omitted).

In addition, the plaintiffs allege:

30. That the public has been severely injured by the actions of the defendants and each of them acting singularly and in concert and in accordance with the policy and practice of the commission administered to by Mr. Larkin in that:

a. Senior citizens (such as Mary Sykes and the family of Mary Sykes) are railroaded into guardianships that result in the Court ignoring the criterion of 755 ILCS 5/11a – 3. (A guardianship is not a 'death sentence' it is an extension of parens patrie in a limited sense so that the liberty and property interests of a senior citizen are protected – unfortunately these defendants and each of them wished to 'cover up' and use the color of law to discourage the First Amendment Rights of plaintiffs so that the liberty and property of the aforesaid senior citizen could be forfeited to favored miscreants.)

b. That a cottage industry appears to have developed in which senior citizens and their families are victimized and deprived of their Fifth and Fourteenth Amendment Rights. Discussion and remediation by attorneys is being thwarted by the actions of the defendants. (see Appendix attached hereto and made part hereof)

c. Lawyers are being intimidated and discouraged from speaking out concerning corruption in the Courts and in particular the type of corruption that was

5

> prosecuted by the United States of America in Operation Greylord
>
> d. In the Circuit Court lawyers engaged by family and friends of victims of 'elder cleansing' (i.e. elder abuse, financial exploitation and guardianship abuse) are discouraged from representing objecting friends of family of victims. In proceedings controlled by Larkin the same pattern has been observed by the disqualification of Ditkowsky and his being prevented from representing Ms. Denison. (The facts of the Peel case reveal that Attorney Peel was representing lawyers before the commission).

To prevail in this § 1983 action, the plaintiffs must establish that: (1) they had a constitutionally protected right, (2) they were deprived of that right, (3) Defendants intentionally deprived them of that right and (4) Defendants acted under color of state law. *Forrest v. Prine*, 620 F.3d 739, 743 (7th Cir. 2010). "There is no generalized First Amendment right to speak whenever one desires." *Armstrong v. Fishel*, No. 14 C 1015, 2014 WL 1282551, at *2 (C.D. Ill. Mar. 31, 2014). It is not entirely clear, but it appears that the plaintiffs are alleging a First Amendment retaliation claim. In order to succeed on a First Amendment retaliation claim, the plaintiffs must show that: (1) they engaged in activity protected by the First Amendment; (2) they suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 545 (7th Cir. 2009)(internal quotations and citations omitted).

As an initial matter, Farenga and Stern are immune from any claims based on statements they made within the course of their court-appointed duties. *Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009) ("Guardians ad litem and court-appointed experts, including psychiatrists, are absolutely immune from liability for damages when they act at the court's direction."). Thus, to the extent that the plaintiffs' claims are based on statements made by Farenga and Stern in the guardianship

6

proceeding, they are absolutely immune. Further, Illinois attorneys have an absolute duty to report misconduct of other attorneys. *See Skolnick v. Altheimer & Gray*, 730 N.E.2d 4, 13 (Ill. 2000). Also, Illinois courts have recognized that persons making reports to the ARDC enjoy absolute immunity from state law tort liability. *Lykowski v. Bergman*, 700 N.E.2d 1064 (Ill. App. Ct. 1998). While it is not clear that the same immunity applies to alleged federal civil rights violations, the Court notes that Farenga would enjoy such immunity were the Seventh Circuit to so hold.

Regarding Larkin, the ARDC is an arm of the state of Illinois and is protected by the Eleventh Amendment. *Bilal v. Wolf*, No. 06 C 6978, 2009 WL 1871676, at *5 (N.D. Ill. June 25, 2009). Therefore, any claim for damages against Larkin in his official capacity is barred. *Id*. Moreover, while injunctive relief is not barred by the Eleventh Amendment, the plaintiffs lack standing to seek prospective injunctive relief as they do not contend that Larkin will interfere with their First Amendment rights in the future. *Id*. Any claim for damages against Larkin in his individual capacity is barred by the doctrine of prosecutorial immunity. *Id*. at *6 ("The absolute immunity also applies to the Fourth Amendment claim against [the ARDC attorney] that she improperly disclosed witnesses information from Bilal's ARDC file and his credit report because preparing witnesses for a hearing is a prosecutorial function protected by prosecutorial immunity.")

As to Schmiedel, a private attorney, the complaint further fails to state a claim. As noted by the Seventh Circuit:

> Private action can become state action when private actors conspire or are jointly engaged with state actors to deprive a person of constitutional rights, where the state compels the discriminatory action, when the state controls a nominally private entity, when it is entwined with its management or control, when the state delegates a public function to a private entity, or when there is such a close nexus between the state and the challenged action that seemingly private behavior reasonably may be treated as that of the state itself.

7

*Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 815–16 (7th Cir. 2009). The plaintiffs allege none of the above. To the extent that the plaintiffs' allegations even constitute purported retaliation for engaging in an activity protected by the First Amendment,[1] with respect to the allegations that the defendants acted in concert or pursuant to a scheme or conspiracy, the complaint is completely lacking in facts to support that allegation. *Poole v. Saddler*, No. 13 C 4984, 2014 WL 585306, at *4 (N.D. Ill. Feb. 14, 2014) ("Plaintiff's Section 1983 conspiracy claim against Jones fails . . . because the Complaint lacks any allegations linking Jones to a purported conspiracy to violate his constitutional rights"). Thus, the claim against Schmiedel fails. The same holds true for Stern and Farenga, who were guardians ad litem in the Mary Sykes case, to the extent they are not immune. "[A] guardian ad litem is not a state actor subject to liability under 42 U.S.C. § 1983." *Lane v. Milwaukee Cnty. Dept. of Social Servs. Children and Family Servs. Div.*, No. 10 C 297, 2011 WL 5122615, at *4 (E.D. Wis. Oct. 28, 2011). Because Stern and Farenga are not state actors and the plaintiffs have not alleged facts supporting a conspiracy or that the defendants acted in concert, the § 1983 claim against them fails.

Moreover, even assuming that the plaintiffs engaged in activity protected by the First Amendment and suffered a deprivation that would likely deter First Amendment activity in the future, the complaint contains no allegations supporting a finding that their First Amendment activity was a motivating factor in the defendants' decision to take the alleged retaliatory actions.

---

[1] The Court notes that to the extent the plaintiffs complain that their First Amendment rights were violated because they have been discouraged or prevented from speaking out regarding corruption in the courts, false or reckless accusations of dishonesty within the judicial system do not fall within the scope of protected speech. *Matter of Palmisano*, 70 F.3d 483, 487-88 (7th Cir. 1995).

Thus, the allegations against all of the defendants fail to state a § 1983 claim.

The plaintiffs also allege that they were deprived of equal protection of the law because Ditkowsky was disqualified from representing Denison in her ARDC proceeding (Compl., Dkt. # 1, ¶ 29), but this allegation fails to state a claim either for disparate treatment because of membership in a particular group or a class-of-one claim. *Headrick v. Trice*, 14 C 294, 2014 WL 1243271, at *2 (S.D. Ill. Mar. 26, 2014).

Finally, the Court does not address the defendants' statute of limitations arguments as the plaintiffs need not plead around affirmative defenses.

**Conclusion**

Because the plaintiffs fail to state a federal claim, the Court declines to exercise jurisdiction over the state law claim for intrusion upon seclusion. Therefore, for the reasons stated above, the § 1983 claim against the defendants is dismissed with prejudice and the state law claim is dismissed without prejudice. Civil case terminated.

**Date**: April 21, 2014

_____
      **Ronald A. Guzmán**
      **United States District Judge**